## Case No. 10,657.

### In re PADDOCK.

#### [6 N. B. R. 132.] [1]

District Court, E. D. Michigan. Jan. 16, 1872.

BANKRUPTCY—DEBT ILLEGALLY CONTRACTED—
LIQUORS.

1. A debt contracted in whole or in part for spirituous liquors, being in violation of the laws of Michigan must be rejected, and the name of the claimant stricken from the list of creditors of the estate of the bankrupt.

2. Claimant ordered to pay the costs and an attorney's fee of ten dollars.

[Cited in Re Pease, 29 Fed. 595.]

---

[1] [Reprinted by permission.]

[This case was formerly heard upon the question of payment to certain creditors of witness fees. Case No. 10,658.]

The issues arise upon the three several petitions of Theodore C. Etheredge, assignee of the estate of the said bankrupt [S. Paddock], to reject the debts of certain creditors which have been proven before the register, viz: of Dyer & Wilder, of Toledo, Ohio, for one hundred and ninety dollars; of Markscheffel Brothers, of the same place, for three hundred and fourteen dollars and seventy-nine cents, and of Marshall Brothers & Co., of the same place, for one hundred and forty-nine dollars and nine cents; for the alleged reason that the said debts were contracted for spirituous and intoxicating liquors sold in violation of the statutes of the state of Michigan. The said creditors put in their respective answers to the said petitions, admitting that the debts were contracted for spirituous and intoxicating liquors, but alleging that they were so contracted at Toledo, in the state of Ohio, and that by the laws of the latter state the same were legal and valid. Proofs were taken, and the facts appear to be as follows: the liquors were furnished to the bankrupt upon his orders given by him at Coldwater, in the state of Michigan, his place of business. Each bill of liquors so furnished exceeded fifty dollars in amount. There was no note or memorandum made in writing and signed by the bankrupt, of any of the orders except two, and they were unstamped. All the orders were taken by traveling agents of the sellers except one of the unstamped written orders, and one taken by one of the sellers in person. The orders taken by agents were in all cases subject to the approval of the sellers. There does not appear to have been any express direction or agreement as to how the liquors were to be forwarded, but as matter of fact they were placed by the sellers on the cars of the Michigan Southern and Northern Indiana Railroad at Toledo, and thence carried on said cars to Coldwater, where they were received by the bankrupt, and this was the only means of transportation of freights by common carrier between those places.

Mr. Pond, for petitioner.
Mr. Austin, for creditors.

LONGYEAR, District Judge. A preliminary objection was made on behalf of the creditors to the jurisdiction of the court, "for the reason that they are entitled to have the validity of their said claims adjudicated, and determined in a court of law, and by a jury." I do not consider this objection tenable in the present form of proceeding, for two reasons: First, because the creditors stand before the court in the attitude of plaintiffs, themselves invoking the jurisdiction to which they object; and, second, because by general order in bankruptcy num-

ber twenty-six, ample provision is made for adjudication and determination of their claim in a court of law and by a jury, of which the creditors may avail themselves by taking an appeal to the circuit court under section eight of the bankrupt act, in case they were dissatisfied with the decision of this court.

The question for decision is, whether these debts under the circumstances stated, are to be deemed as having been contracted at Coldwater, in the state of Michigan, or at Toledo, in the state of Ohio. If the former, then it is conceded that they are illegal and void under the prohibitory liquor law of Michigan, and must be stricken out. If the latter, then it is also conceded that they are valid and must remain as debts against the estate of the bankrupt.

On the one hand it is contended that because the orders were subject to approval of the sellers at Toledo, and that by the usual course of business between the parties the liquors were to be delivered on the cars at Toledo, that was the place where the contracts were completed, and therefore they were Ohio contracts. On the other hand, while it is conceded that such would be the legal effect in the case of a valid order, it is contended that the orders were themselves void by the statute of frauds, and that no debt could be created by virtue of anything done under them until the liquors were actually accepted and received by the bankrupt, and that such receipt and acceptance having taken place at Coldwater, that is the place where the debts were in fact contracted, and therefore they were Michigan contracts.

The orders upon which the liquors were furnished consist of three classes: First, those which were given verbally to agents; second, the one given verbally to a principal; and third, the two which were given in writing.

First. As to the verbal orders given to agents. The statute of frauds of Michigan (2 Comp. Laws, p. 944, § 3184) enacts that "no contract for the sale of any goods, wares or merchandise, for the price of fifty dollars or more, shall be valid unless the purchaser accept and receive part of the goods sold, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain be made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorised." This is but a re-enactment of the English statute, and it has been held in England that a common order, like those here in question, given to the seller for the article required, is clearly equivalent to a contract for the purchase, and so within the statute. Brown, St. Frauds, § 293; Allen v. Bennet, 3 Taunt. 169. I think the circumstance that the orders were taken by the agents subject to the approval and acceptance of the principals, whose place of business was in Ohio, does not prevent the application of the Michigan statute. The orders being approved and acted on by the principals, constituted the contracts on the part of the purchaser, and having been made in Michigan, the contracts were Michigan contracts so far as this question is concerned. The statute does not require that the contract should be signed by both parties to make it valid, but it does require that it must be signed by the party to be charged thereby. The bankrupt's estate is sought to be charged by virtue of the orders as constituting the contracts for the purchase on the part of the bankrupt. The orders were given in Michigan, and each purchase was for more than fifty dollars. The statute of Michigan, therefore clearly applies unless avoided by something in the case other than the circumstance that the orders were taken by the agents subject to the approval of the principals.

It is contended that although there was no express direction as to how the liquors were to be forwarded, yet the mode in which they were forwarded being the only means of transit, and that being according to the usage of the parties, it must be presumed to have been so intended, and that therefore the delivery on the cars at Toledo was the completion of the contracts, and hence they were Ohio contracts. However that may be, in a case of a contract not within the statute of frauds, it is clearly not so in a case like the present of contracts which are within that statute. Here delivery alone is not sufficient. Acceptance and receipt of the goods by the purchaser are essential. The right of stoppage in transitu still remained to the sellers after such delivery, and the right to reject the goods still remained to the purchaser. In all such cases it is well settled that it is the actual acceptance and receipt of the goods by the purchaser alone that constitutes a completion of the contract, so as to take it out of the statute making it invalid if not in writing. Brown, St. Frauds, § 916; Story, Sales, § 276; Hil. Sales, 161; 2 Pars. Cont. 321, 322; Alderton v. Buchoz, 3 Mich. 322. The acceptance and receipt of the liquors by the bankrupt took place at Coldwater, in the state of Michigan. The contracts for their purchase, by virtue of these orders, were therefore completed in that state, and of course were Michigan contracts, and as such subject to the laws of that state.

Second. As to the verbal order given to the seller in person. This order was also given at Coldwater, in Michigan, and except that it was not subject to subsequent approval, it is in all respects like the verbal orders given to agents, and the same considerations apply to it as have been applied to them. It is therefore also a Michigan contract.

Third. As to the two orders which were given in writing. As we have already seen,

such orders are equivalent to contracts of purchase. As such they come clearly within the purview of the internal revenue law of the United States, and were subject to a stamp of five cents. 13 Stat. 298. By this same law, as amended by the act of congress of July 13, 1866, it is provided "That hereafter no deed, instrument, document, writing or paper, required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof shall be recorded, or admitted or used as evidence in any court until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto, as prescribed by law." 14 Stat. 143, 144. Therefore, as to these two items there is no evidence before the court of any order or request of the bankrupt. No liability or indebtedness of the bankrupt can therefore be deemed to have accrued on account of these items until the liquors were actually received and appropriated by him, and as such receipt and appropriation actually took place at Coldwater, in Michigan, these must also be deemed Michigan contracts.

We see then that each and all the debts in controversy arose out of Michigan contracts, and as such it is conceded that so far as they were for spirituous liquors, in whole or in part, they are absolutely invalid and void by the provisions of the prohibitory liquor law, so-called, of Michigan. The debts of Dyer & Wilder and Marshall Brothers & Co. appear to be wholly for spirituous liquors, and are therefore invalid and void. The debt of Markscheffel Brothers appears to have been part for spirituous liquors and part for groceries. The items for liquors are first in point of time in the account. Payments had been made on the account from time to time, and the bankrupt's notes had been taken to balance the account. The debt, as proven before the register, was based upon these notes, except as to a small account wholly for spiritous liquors, purchased by the bankrupt after the notes had been given. The payments which had been made before the notes were given were more than sufficient to cover the items for liquors, and it was contended that inasmuch as the items for liquors were the older items in point of time, the payments must be deemed to have been made upon such items, and that therefore the balance of account for which the notes were given must be deemed to have been wholly for the groceries.

But here steps in another provision of the prohibitory liquor law of Michigan, as follows: "All payments for such liquors hereafter sold in violation of law shall be considered as having been received without consideration and against law and equity, and any money or thing paid therefor may be recovered back by the person so paying the same," etc. The payments which were made cannot therefore be deemed as applying to the items for liquors; neither could they be, even if they had been made with that express direction, which, however, does not appear to have been the case. There is, however, another complete answer to this claim. The balance for which the notes were given was of the whole account, of which the items for liquors constituted a part. The consideration, therefore, must be deemed to have been in part for spirituous liquors, and this makes the notes invalid and void, the same as if the whole consideration had been such.

Each of the debts in controversy is therefore held to be invalid and void by reason of its having been contracted in whole or in part for spirituous liquors in violation of the laws of Michigan, and the same must be rejected, and the names of the respective claimants must be stricken from the list of creditors of the estate of the bankrupt, and the said claimants must pay the costs of this proceeding, including an attorney's fee of ten dollars in each case.

A separate order as to each debt must be prepared and signed to carry out the above decision.