*In re* PEASE.

*(District Court, N. D. Illinois.* January 4, 1887.)

1. BANKRUPTCY—EXPUNGING CLAIM—RULE 34—REV. ST. U. S. § 5081.

A claim allowed against a bankrupt's estate can be re-examined and expunged, under rule 34 of rules in bankruptcy, on the application of the bankrupt as well as that of the assignee or creditor, although the rule only names the latter; Rev. St. U. S. § 5081, expressly providing that any claim may be re-examined on application of the assignee, any creditor, or the bankrupt.

2. SAME—NOTICE OF REGISTER'S DECISION.

A register in bankruptcy need not give notice to either party of his findings and decision on a proceeding to re-examine and expunge a claim.

3. SAME—REVIEW OF REGISTER'S DECISION.

The last clause of bankruptcy rule 34, relating to proceedings for proof of debts before the register, providing that "all orders thus made by the register

may be reviewed by the court on a special petition; and, upon showing satisfactory cause for such review," gives to a party not satisfied with the action of the register, in proceedings for the re-examination of a claim, the right to review it by petition, although no objection was made before the register, and no issue was made up and certified into court, as is elsewhere provided in the rule may be done in proceedings for re-examination.

4. SAME—FINDING—MERGER OF CLAIM.

In proceedings to expunge the proof of a claim made against a bankrupt's estate, *held*, that the evidence showed that, although there was originally an account due the claimant from a firm of which the bankrupt was a member, yet that the claim was merged in acceptances afterwards given by that firm and its successors, indiscriminately, which acceptances were either paid, or were outstanding in the hands of other parties, and that the claim should therefore be expunged.

5. SAME—PURCHASE OF CLAIM—ESTOPPEL OF BANKRUPT—PROMISSORY NOTE.

A bankrupt is not estopped from applying to have a claim proved against his estate expunged, because he included it in his schedule of debts, if it was described in the schedule as evidenced by a promissory note, but was proved as a sum due upon an open account, as against a purchaser of the claim without the note.

6. SAME—PURCHASER WARNED.

No estoppel can arise in favor of the purchaser of a claim, against a bankrupt's estate, included by the bankrupt in his schedule of debts, who is informed by the bankrupt, before purchasing, that the assignor has no valid claim against the estate.

7. RELEASE AND DISCHARGE—JOINT DEBTORS.

One of several joint debtors is, under the Illinois law, discharged by action brought and judgment obtained against the other without joining him.

In Bankruptcy.

*Cook & Upton* and *M. W. Fuller*, for the bankrupt.

*Dent & Black*, for claimant.

BLODGETT, J. This is a proceeding to expunge the claim of J. W. Gregg for $21,000, proven against the bankrupt's estate, and allowed by the register. Pease was adjudged bankrupt, August 29, 1878, on his own petition, and his assignee appointed October 7, 1878. Among the indebtedness scheduled by the bankrupt is an indebtedness of J. W. Gregg for $13,000, on a promissory note, with a memorandum that it was an indebtedness of the firm of T. S. Dobbins & Co., of which firm bankrupt was a member. On January 29, 1883, Gregg proved the claim now in controversy, against the estate, for $21,000, as a balance of account due for work and labor as a contractor on the Chicago & Pacific Railroad, upon a contract with T. S. Dobbins & Co., of which firm the bankrupt was a member. Soon after his claim was thus proven and allowed, it was assigned to William Ritchie, who has since appeared and claims to be subrogated to Gregg's place as a creditor of the estate. In fact, the proof shows that Ritchie had made a conditional purchase of the claim before it was proven. At some time after this claim was proven, but the date is not disclosed in the record, the bankrupt filed a petition for expunging this claim, which it is stated, and I assume it is true, was lost or mislaid by the register; and on November 28, 1885, an amended petition was filed by the bankrupt for the same purpose, on which voluminous proofs were taken, and the register, upon such proof, has found

that this claim should be wholly disallowed and expunged, and so ordered.

The creditor has filed exceptions to the register's finding, and a petition for the review of the register's action in the matter, in which he states his reasons why the finding of the register should be reviewed and reversed.

1. That no authority is given the bankrupt to apply for the expurgation of a claim proven against his estate. It is true that rule 34 in bankruptcy only states "that when the assignee, or any creditor, shall desire a re-examination of any claim filed against the bankrupt estate," etc., proceedings shall be had to that end; but section 22 of the original bankrupt act (now section 5081, Rev. St.) expressly provides that any claim may be re-examined on application of the assignee, any creditor, or the *bankrupt;* and the practice of this court has been to re-examine and expunge under rule 34, on application of the bankrupt as well as that of the assignee or a creditor. This also seems to have been the practice elsewhere. *In re Patterson*, 1 N. B. R. 100; *In re Lathrop*, 3 N. B. R. 413.

2. That the report and finding of the register was filed without notice to the creditor, or his attorneys. There is no requirement, either in the bankrupt law or the rules under it, that the register shall give notice to either party of his findings and decision on a proceeding to re-examine and expunge a claim. The register is required, on a petition being filed for the re-examination of a claim, to fix the time for hearing the petition, of which due notice shall be given to the creditor, which notice it will be presumed he gave from a memorandum by the register on the petition, and the subsequent action of the parties creditor and bankrupt in proceeding to take proofs; but there is no provision for notice to be given the creditor of the register's final conclusion or action in the proceeding. That becomes a matter of record, of which a creditor who has proven a claim is bound to take notice, the same as he would, if he were a party to a suit, of the final action or judgment of the court on such suit. *In re Paddock*, 6 N. B. R. 132; *In re Kyler*, 2 N. B. R. 650.

While there does not appear to have been a close adherence to technicalities in the proceedings before the register in the re-examination of the claim, it does sufficiently appear that the parties to this contention appeared before him, took voluminous proofs, and filed briefs, and discussed at length the law and evidence involved in the proceeding. This testimony, with an abstract of it and briefs of counsel, was returned into court with the register's report of his findings, from which it sufficiently appears, as it seems to me, that this creditor has had all the notice to which he was entitled under the law and rules in bankruptcy. It is contended on the part of the bankrupt that the creditor cannot now be heard to question the action of the register, because no objection was taken to the proceedings before the register, and no issue made up at the request of the parties, and certified into court; but my interpretation of rule 34 is that a petition for a review of the register's action may be filed even where the register, without objection, proceeds to hear the proof and

adjudge upon the claim. The last clause of the thirty-fourth rule reads as follows: "All orders thus made by the register may be reviewed by the court on a special petition, and upon showing satisfactory cause for such review." This clause evidently does not apply to the re-examination of claims where the register simply takes the proof, requires an issue to be made up, and, at the request or on the objection of either party, certifies the proofs and issue to the court; but it gives either party not satisfied with the action of the register the right to a review of the register's action by a petition.

3. That the register has, without sufficient proof, found that there was no indebtedness due from the brankrupt to Gregg at the time this claim was proven. This involves a consideration of the testimony taken in the case by the register, and which is fully discussed by the register in his report. I have read this proof, and the briefs of counsel analyzing and discussing it, and am of opinion that the register's finding is abundantly supported by the preponderance of proof. The bankrupt was a member of the firm of T. S. Dobbins & Co., a firm formed, in 1870 or 1871, for the purpose of constructing the Chicago & Pacific Railroad, or a portion of it, and was dissolved July 1, 1874, by the limitation of its articles of copartnership. In August, 1873, Gregg and his partner, Munger, took a contract for grading the second division of the railroad, which extended from Elgin to Byron, in Ogle county, in this state. When the firm dissolved in July, 1874, Dobbins assumed the indebtedness of the firm, and continued the work in which the firm had been engaged, and Gregg completed his grading contract in November, 1874.

At or about the time he so finished the grading, there was due Gregg a balance of about $15,000, as shown by the books of T. S. Dobbins. When the firm of T. S. Dobbins & Co. dissolved, the first of July, 1874, their books showed a balance due Gregg of about $21,000; but this account had been carried on to the books of T. S. Dobbins, and on the seventh of November, 1874, had been reduced to about $15,000. The question is whether this balance proven by Gregg, which probably was intended to represent the balance of July 1, 1874, has ever been settled, or whether it still remained due to Gregg at the time the claim was proven in bankruptcy.

T. S. Dobbins & Co. dissolved July 1, 1874, as I said, by the limitations of their articles of copartnership. Dobbins assumed the debts of the concern, and continued the business alone, until November 7, 1874, during which time Gregg was going on with and substantially completing the grading contract, when a new firm, consisting of T. S. Dobbins, John S. Wilcox, and George S. Bowen, was formed under the firm name of Dobbins & Co.; the new firm assuming the indebtedness of the old firm of T. S. Dobbins & Co., and of T. S. Dobbins, and continuing the same work undertaken by T. S. Dobbins & Co. Gregg's account on the books of T. S. Dobbins & Co. was transferred to the books of T. S. Dobbins on the dissolution of the firm of T. S. Dobbins & Co., July 1, 1874, and on the formation of the new firm of Dobbins

& Co. the balance then due Gregg was carried on to the books of the new firm, this balance being at that time about $15,000. The proof also shows that Gregg, in November, 1874, took a contract from Dobbins & Co. to lay the iron on the second division of the road from Elgin to Byron, which he completed some time in the spring of 1875; and that for the balance due him on the grading contract, and for what was earned on the ironing contract, Gregg, before the first day of June, 1876, received acceptances of T. S. Dobbins & Co., and Dobbins & Co. so as to fully balance the account,—that is, drafts drawn by Gregg, and accepted by T. S. Dobbins & Co., or Dobbins individually, or Dobbins & Co., were put in circulation representing the entire amount due Gregg on these contracts; and the proof also shows that all these acceptances, except drafts aggregating about $12,000, had been paid prior to July 1, 1876, and that most of these unpaid drafts were drawn on and accepted by the firm of Dobbins & Co., of which the bankrupt, Pease, was never a member, and that such drafts are still outstanding and unpaid, and not held by Gregg, or by Ritchie, who claims to be Gregg's assignee of this claim.

There are contradictions between Gregg and Barnhart, called in support of this claim, and the witness Ogden, called in behalf of the bankrupt,—Ogden having been the book-keeper of T. S. Dobbins & Co., and of Dobbins, and Dobbins & Co., and was the man who issued these acceptances and balanced the books; but his testimony is so direct, clear, and intrinsically probable as, in my estimation, to far outweigh that of Gregg, and his book-keeper, Barnhart, who testified without books, and from memory only,—Gregg's books having been destroyed in 1875, soon after he completed his contract. The fact that the proof shows, especially the deposition of Bowen, that many of the drafts drawn on account of the grading contract were drawn on and accepted by Dobbins & Co., is very convincing, aside from the testimony of Ogden that Gregg had made a novation with Dobbins & Co., by which he had accepted them as his debtors for whatever balance might be due or earned by him on the old grading contract. The proof to which I have referred shows a series of drafts drawn on account of grading by Gregg on Dobbins & Co., which must have been for payment of this old grading account, and the proof also shows that the balance due on that account was carried on to the books of Dobbins & Co., and, in fact, that neither Dobbins & Co., nor T. S. Dobbins, nor T. S. Dobbins & Co., were ever indebted to Gregg, except on account of this grading and ironing contract; and it also shows that this account is balanced by the drafts drawn against it and accepted, mainly, by Dobbins & Co. The proof, I think, is so convincing as to leave no reasonable doubt that the amounts earned under the grading contract, and under the ironing contract, were carried along on the books of Dobbins & Co. as one account, and that this account was fully balanced by acceptances, which have been either fully paid, or are now outstanding, and are not held by either Gregg or Ritchie.

Gregg took no steps to prove any claim against the bankrupt's estate until Ritchie, the present owner of the claim, finding, as it would seem

from the proof, and also from papers in the files in this case, that his in-terest might be indirectly, if not directly, subserved, if he should appear as a creditor of Pease, opened a correspondence with Gregg, and proposed to purchase his claim when it should be proven to the satisfaction of the register. The ordinary *ex parte* proof was made, and Ritchie paid Pease upwards of $2,000 for the claim. Gregg, therefore, stands where he must be expected to support this claim, which was established by his oath, and must be treated as a witness directly interested in the result of the case. Barnhart only testified as to what Gregg's books showed in 1875, as he remembers them, which is extremely unreliable testimony, while Ogden testifies from an examination of his books, with the advantage of having his memory quickened and refreshed by such examination. Ogden is also corroborated by the course of business. Gregg drew, in addition to cash payments which he received from time to time, drafts in favor of his subcontractors and others, which were accepted, payable in 30, 60, or 90 days after date, and these drafts appear to have been accepted by whatever firm was then in charge of this railroad work as principal contractor. This is so natural, and so much in the regular course of business, as to be probable; and although Gregg testifies that he knew nothing in regard to these changes in the firm with which he was dealing, yet I think it hardly possible that he did not know that the firm of T. S. Dobbins & Co. did not include the same persons who composed the firm of Dobbins & Co., as the proof shows that he made a written contract for laying the iron with Dobbins & Co., and drew drafts on such firm on account of grading. Also it is extremely improbable that so large a balance as $21,000 would have stood unadjusted in Gregg's favor upon the books of this firm, from early in 1875 to the time this claim was proven. It is much more probable that these drafts or acceptances, or some evidence of indebtedness, would have been given to balance this account.

It appears that Dobbins & Co. went into bankruptcy shortly before Pease, and scheduled among their debts a balance of $13,000, due Gregg, as stated in their schedule, in promissory notes. Pease, when he filed his schedule, not having access to the books of T. S. Dobbins & Co., and assuming that he might be in some way liable as a member of that firm, took the item in question from their schedule, and scheduled himself as indebted, as a member of the firm of T. S. Dobbins & Co., to the amount of $13,000 on a promissory note. Dobbins & Co.'s schedule, having probably been made from their books, would naturally state the amount of the indebtedness on these old contracts with Gregg, but might err as to the form of the indebtedness, whether it was evidenced by notes or acceptances or drafts.

It is also urged that the bankrupt is liable upon certain drafts, amounting in the aggregate to over $1,700, accepted in favor of one Ryan by the firm of T. S. Dobbins & Co., of which he was a member; but, if the bankrupt was ever liable upon these acceptances, I think there can be no doubt that he has been relieved by the action of Ryan, as Ryan has brought suit and obtained judgment upon the acceptances against Dob-

bins, Wilcox, and Bowen, and did not join the bankrupt, or make him a party to the suit, thereby, in the light of the Illinois authorities, releasing the bankrupt from liability on these acceptances, even if he was ever liable thereon. *Wann* v. *McNulty*, 2 Gilman, 355; *Thompson* v. *Emmert*, 15 Ill. 415; *Mitchell* v. *Brewster*, 28 Ill. 163; *People* v. *Harrison*, 82 Ill. 84.

It is also claimed that a draft of $500 was given as a guaranty draft to indemnify Munger, who was at one time a partner of Gregg in this grading contract; that when Munger and Gregg dissolved partnership there were some small unsettled claims against the firm of Munger & Gregg, and, as Gregg assumed the business and the liabilities of the firm, this draft of $500 was drawn and given to Munger to indemnify him against possible liability upon some small outstanding claims against the firm. There is no proof that Munger or Gregg has ever returned this draft, or that it has in any way been settled or adjusted; and it would clearly seem, from the proof, that it was Gregg's business to have obtained this draft from Munger, and surrendered it for cancellation to the firm that issued it, before he can claim a credit for it.

It is possible, from the proof, that, upon an adjustment between Gregg and some of these firms, a small balance might be found due him for extra work, or on this guaranty draft, if it has subserved its purpose, and can be produced and canceled; but this was proven as an *omnibus* claim for the full balance claimed to be due in November, 1874, and not for any small balance which might be found due on a careful accounting and rectification of all mistakes and debits and credits in the dealings of the firms, and I understand this creditor's position to be that the whole of that claim as proven, or nothing, is due. Yet, if this position should be changed, I do not see how, as the proof stands, anything can be found due on this claim. The proof is, as I think, convincing and conclusive that the entire balance due Gregg for this railroad work is represented in outstanding drafts and acceptances by either T. S. Dobbins & Co., or Dobbins, individually, while he was carrying on the business alone, between July 1 and November 7, 1874, or Dobbins & Co.; and none of these drafts are produced by Gregg, nor does he pretend that he owns them. If they have not been paid, the indebtedness they represent has been merged in them, and is due to whoever holds them, and not to Gregg. It therefore seems to me that the register was fully justified in determining that Gregg was not a creditor of Pease at the time this claim was filed and proven.

The further point made in the petition is that, inasmuch as this is a petition on the part of the bankrupt himself to expunge this claim, he is estopped by his schedule from denying its validity as against Gregg, or Ritchie, Gregg's assignee, because he has scheduled a claim in favor of Gregg for $13,000, and verified his schedule by his oath, and that Ritchie has been induced to pay value for the claim because of this schedule and verification. This schedule states expressly that the indebtedness is evidenced by a promissory note given in 1875 on account of debts of T. S. Dobbins & Co. Read, according to its legal effect, it is a statement

that, in 1875, the firm of T. S. Dobbins & Co. gave J. W. Gregg a promissory note for $13,000. Waiving the question whether it is possible to apply the doctrine of estoppel to a case in bankruptcy, where the bankrupt in filing his schedule is acting for his creditors as well as himself, it is sufficient to say that the claim scheduled by the bankrupt is not the one proved by the alleged creditor. The claim is not upon notes, or a note, and no notes are produced, and the record is barren of proof that Gregg held any notes or negotiable securities such as this schedule represents evidenced this claim. It is probable from the proof that this balance of indebtedness described in the schedule of Dobbins & Co., copied by Pease from that schedule, was evidenced by drafts and acceptances, and not by notes, although this fact is not conclusively proven. That is, it is quite probable from the evidence that, when Dobbins & Co. made out their schedules, they knew that there was an unpaid liability of between twelve and thirteen thousand dollars on account of this old indebtedness of Gregg, and it was accordingly scheduled as due on the notes, and Pease copied it into his schedule, when, in fact, it was due on acceptances. But enough appears upon the face of the schedule to put Ritchie, the purchaser of this claim, upon inquiry; and if Gregg could not produce the note, or commercial paper of some kind, he had no right to deal with him as the owner of the claim scheduled. A debtor, after the lapse of some time, and who has never personally transacted the business out of which his liability has arisen, and has not kept the books, might naturally enough make a mistake as to whether the liability was evidenced by notes, drafts, or acceptances; but a person negotiating for the purchase of a claim, which the bankrupt has scheduled as evidenced by note, is put upon notice that the note should be produced or accounted for, and, if he buys the claim without the note, he takes his chance that the claim, if it exists, will belong to the holder of the note, and not to the original payee in whose name it is scheduled. The proof also shows that, while Ritchie was negotiating for this claim, he was told by the bankrupt that Gregg had no claim against the estate, or against T. S. Dobbins & Co., which is, of itself, a conclusive answer to the estoppel proof and argument.

In the light of these facts, therefore, I do not think that Pease is estopped to contest this claim as proven. The petition for review and the creditor's exceptions to the register's report are therefore dismissed for want of equity, and costs adjudged against the petitioner.

Since this petition for review was filed, the petitioner has taken proof, in support of this petition, especially bearing upon the question of estoppel. I incline to the opinion that when a petition for review is filed by a creditor, or any other person, under the last clause of rule 34, no new testimony can be taken in the case, as the review must be upon the record as made by the register, and not on new proof, unless, perhaps, the court should see fit to send the case back to the register for further proof; but, as both parties have taken proof on this petition, I have looked into and considered it, and do not deem it necessary to exclude this proof from the record.